[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14726
Non-Argument Calendar
_____

D.C. Docket No. 3:10-cv-00471-MCR-CJK


PAYROLL MANAGEMENT, INC.,
A Florida Corporation,
PAYROLL MANAGEMENT, INC. OF DELAWARE,
A Delaware Corporation,
YOOHOO CAPITAL, LLC,
A Georgia Limited Liability Company,

                                        Plaintiffs - Appellants,

versus

LEXINGTON INSURANCE COMPANY,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 15, 2014)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Payroll Management, Inc. (PMI), Payroll Management, Inc. of Delaware (PMI Delaware), and Yoohoo Capital, LLC (Yoohoo) appeal the district court's grant of summary judgment to Lexington Insurance Company (Lexington) on grounds that issues of material fact remain. We do not reach that issue, as we find that the district court's subject matter jurisdiction was not properly established. However, we find that the defects in jurisdiction likely can be cured by dismissing PMI Delaware and by additional fact-finding to establish Yoohoo's citizenship. Accordingly, we remand for the limited purposes of establishing whether the parties would be prejudiced by dismissing PMI Delaware and determining Yoohoo's citizenship. We vacate the district court's order granting summary judgment but do so with instructions that if the court below is satisfied that the jurisdictional defects are cured, it should reenter its summary judgment order.

## I.

Lexington insured PMI, an employee leasing company, under the terms of an Employment Practices Liability Insurance Policy (Policy). PMI provides health care for the employees they lease to client companies, but PMI fell behind on payments to their health insurance provider, Blue Cross/Blue Shield of Florida

2

(BCBS). BCBS sued PMI seeking payment in full, and PMI filed a claim under the Lexington Policy requesting coverage for expenses related to the BCBS suit.

Meanwhile, Yoohoo was in the process of performing due diligence in advance of a potential acquisition of PMI and PMI Delaware when it discovered the BCBS lawsuit. Before attempting to acquire PMI, Yoohoo sought written assurances from Lexington that it would cover the costs of the BCBS suit and any judgment against PMI. Stephen Burwell, a claims examiner with Lexington, informed PMI and Yoohoo that, "[a]s we discussed, there appears to be coverage for this matter under [the] Policy [] but, as we also discussed, I must review with my supervisor." Yoohoo found this statement sufficient to allay its fears and acquired PMI and PMI Delaware. Thereafter, Lexington denied coverage, and this suit followed.

PMI and PMI Delaware sued Lexington for breach of contract (Count I) and declaratory judgment (Count II), claiming that Lexington was required to cover costs associated with the BCBS suit under the Policy. Yoohoo sued Lexington for negligent misrepresentation (Count III) based on Burwell's statement that there appeared to be coverage for the judgment. The court ultimately granted summary judgment on all three counts in favor of Lexington, and this appeal followed.

Appellants initially filed in Florida state court, but Lexington filed for removal, asserting diversity jurisdiction. In its notice of removal, Lexington

alleged that PMI Delaware and Lexington were both citizens of Delaware, but Lexington asserted that PMI Delaware was not a real party in interest.  Prior to the district court's adverse grant of summary judgment, Appellants did not challenge Lexington's basis for removal, though they do so now.  The district court also did not address this potential jurisdictional problem.  Because the issue was not addressed, we issued jurisdictional questions to the parties to determine whether the district court had jurisdiction over the case.  *See Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1304 (11th Cir. 2011) (per curiam) ("We are obligated to raise concerns about the district court's subject matter jurisdiction sua sponte.").  After reviewing the parties' answers to the jurisdictional questions, we decided to carry the questions with the case.  Thus, before we can consider the merits of the district court's order granting summary judgment, we must first determine whether the district court had subject matter jurisdiction.  *See Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013) ("We may not consider the merits . . . unless and until we are assured of our subject matter jurisdiction.").

## II.

Whether jurisdiction exists is a question of law we review de novo. *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013).  This case was removed by the defendant on the basis of diversity jurisdiction, which may be

invoked only if "all plaintiffs [are] diverse from all defendants." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999). The defendant in this action, Lexington is a citizen of Delaware (its state of incorporation) and Massachusetts (the location of its principal place of business). *See* 28 U.S.C. § 1332(c)(1). PMI is a citizen of Florida (its state of incorporation and the location of its principal place of business). *See id.* Lexington and PMI are thus diverse.

Issues remain regarding the other two plaintiffs. First, it is clear that PMI Delaware is not diverse from Lexington, as both are Delaware citizens. Thus, we must address Lexington's contention that PMI Delaware is not a real party in interest in this case and should be dismissed to cure this jurisdictional defect. Second, the pleadings suggest that Yoohoo is also a citizen of Delaware, which would destroy diversity. Thus, we must determine whether these pleadings are accurate, and if not, we must determine whether any defect can be cured.

III.

Lexington argues that PMI Delaware is a nominal or formal plaintiff, not a real or substantial party, and therefore, PMI Delaware's citizenship should not be considered for purposes of establishing diversity jurisdiction. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61, 100 S. Ct. 1779, 1781–82 (1980) (noting that diversity depends on the citizenship of only "real and substantial parties" not "nominal or formal parties"). Lexington further notes that this court has authority

to dismiss such plaintiffs to cure jurisdictional defects under Federal Rule of Civil Procedure 21.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832–37, 109 S. Ct. 2218, 2222–25 (1989).  PMI Delaware counters that it is a real party in interest.  *See* Fed. R. Civ. P. 17(a)(1)(F) (listing as a real party in interest "a party with whom or in whose name a contract has been made for another's benefit").  It further asserts that it was harmed by PMI's failure to pay BCBS—the action which led to the BCBS lawsuit—so it therefore has a stake in whether Lexington covers losses associated with that lawsuit.

There is no bright-line rule to distinguish between "real and substantial" as opposed to "nominal or formal" parties.  *See Navarro*, 446 U.S. at 460–61, 100 S. Ct. at 1781–82.  However, case law directs courts to dismiss diversity spoiling parties that do not have a substantial stake in and control over the litigation such that they are not indispensable and would not be prejudiced by being dismissed. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572, 124 S. Ct. 1920, 1925 (2004) ("The question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them." (internal quotation marks omitted)); *Broyles v. Bayless*, 878 F.2d 1400, 1403 (11th Cir. 1989) ("[A] real party in

interest is a party [1] that has a real and substantial stake in the litigation *and* [2] who exercises *substantial control* over the litigation." (first emphasis added)); *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressman & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970) (noting that the test is whether a "court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable").[1]

Ultimately, whether a party is dispensable from an action or whether the party would be prejudiced by dismissal "depends on the facts in each case." *Tri-Cities*, 427 F.2d at 327. And while "courts of appeals have the authority to dismiss a dispensable nondiverse party, . . . such authority should be exercised sparingly . . . . If factual disputes arise, it might be appropriate to remand the case to the district court, which would be in a better position to make the prejudice determination." *Newman-Green*, 490 U.S. at 837–38, 109 S. Ct. at 2225. For reasons discussed below, we believe that PMI Delaware is probably a dispensable party and that no prejudice would result from dismissal, but further fact-finding on several limited issues is necessary to provide sufficient certainty on this point. Therefore, we remand with instructions to consider PMI Delaware's status, consistent with this opinion.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

7

In determining whether dismissing a party will result in prejudice, the court must "look to determine upon whom the state confers substantive rights." *Broyles*, 878 F.2d at 1402. The parties appear to agree that Florida law controls, but the parties have not focused on whether Florida law confers substantive rights upon a party like PMI Delaware. On remand, this should be their focus.

We note, however, that some of the parties' arguments can be addressed and dispensed with at this time without remand. Lexington supports its position that PMI Delaware is a nominal plaintiff by noting that PMI Delaware was not a party to the BCBS policy or the BCBS suit. Consequently, expenses related to the BCBS action, which Lexington is allegedly required to cover under the Policy, were only incurred by PMI, not PMI Delaware. Because the claim at issue is for a loss suffered entirely by PMI, Lexington claims that PMI Delaware has no interest in the litigation. Stated differently, even if Lexington is obligated to cover the losses related to the BCBS suit as asserted in Counts I and II, Lexington would be obligated to cover losses suffered by PMI, not PMI Delaware.

PMI Delaware's counterarguments are somewhat confusing. PMI Delaware first asserts that it is a "real party in interest" as defined in Rule 17(a)(1)(F), which allows "a party with whom or in whose name a contract has been made for another's benefit" to sue under the contract with or without joining the beneficiary. Fed. R. Civ. P. 17(a)(1)(F). This argument is misapplied, and PMI Delaware has

8

yet to explain which substantive rights it seeks to enforce.  It seems as if PMI Delaware is suggesting that it is a party to the BCBS policy and that its clients and employees are third party beneficiaries in whose interest PMI Delaware is suing.  To the extent PMI Delaware asserts its interest in this case on this basis, its argument fails, as the *BCBS policy* is not at issue in this suit, which instead seeks enforcement of the *Lexington Policy*.

PMI Delaware's argument also could be read as suggesting that PMI Delaware is itself a third party beneficiary under the Lexington Policy and is therefore a real party under Rule 17(a).  But PMI Delaware has not alleged facts which would make out such a claim.  Its argument begins by asserting that the "financial interest of PMI Delaware in the outcome of this case is easily demonstrated."  Its financial interests are implicated because PMI failed to pay BCBS, so BCBS terminated coverage of PMI *and* PMI Delaware employees, which in turn placed PMI Delaware in breach of contractual obligations with its clients.

But this assertion fails to establish PMI Delaware's real party status for multiple reasons.  To begin with, PMI Delaware did not allege any harm flowing from the fact that it is in breach of its client service agreements in the complaint.  The harm alleged in this suit flows only from the fact that Lexington allegedly "owes [the] Insured coverage *for the claim made by BCBS* against the Insured."

9

(Emphasis added.)  This highlights a related problem facing PMI Delaware: even if it suffered harm as it claims (in briefing, not in its complaint), there is no evidence suggesting that a judgment against Lexington would provide relief to PMI Delaware.  The claim and suit at issue involve coverage for costs associated with the BCBS lawsuit, not coverage for harm caused by PMI's actions which led to that suit.  PMI Delaware has not alleged in this suit that Lexington has an obligation to provide coverage under the Policy for such damages.  Finally, PMI Delaware has not claimed that it will be able to satisfy contractual obligations and thereby avoid breach claims by clients if it secures judgment against Lexington, nor has it claimed that proceeds from any insurance payment would be used to help PMI Delaware defray costs associated with these potential future breach claims.

Ultimately, even if PMI Delaware suffered a loss, there is no suggestion that the loss suffered is covered by the Policy, that enforcement of the Policy would prevent or undo the loss, or that payment under the Policy for the present claim would inure to PMI Delaware's benefit in any way.  A party which does not stand to benefit cannot file a third party beneficiary claim to enforce a contract, and even parties who benefit can only file a claim if they are intended beneficiaries.  *See, e.g.*, *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981–82 (11th Cir. 2005) (explaining that under Florida law, even if a third party benefits from enforcement of a contract, it cannot file a claim unless it is an *intended* beneficiary).  PMI

10

Delaware cannot, without showing much more, claim that it has a substantive right under Florida law as a third party beneficiary of the Lexington Policy.[2]

PMI Delaware's likely response is that PMI and PMI Delaware are essentially one business. Under this theory, a judgment for PMI is effectively a judgment for PMI Delaware. PMI Delaware is just as much a party to this suit as PMI, so the argument goes, because the businesses are comingled. PMI Delaware did not cite any authority recognizing that a corporation becomes a "real party in interest" by virtue of comingling extensively with a real party in interest, and we are skeptical that they could find any. This argument asks us to respect corporate form for purposes of diversity then disregard it for purposes of determining real parties in interest. If anything, PMI Delaware's "one business" argument confirms that PMI Delaware should be dismissed. There is no doubt that PMI is a real party: it was the named defendant in the BCBS suit, and it is the named insured in the Lexington Policy. So, if the two companies are really one, the one company clearly seems to be PMI. This would render PMI Delaware a party in name only, and such nominal parties can be dismissed. *See Navarro*, 446 U.S. at 460–61, 100 S. Ct. at 1781–82.

---

[2] It is also possible to construe PMI Delaware's brief as an attempt to argue that its clients and/or employees are third party beneficiaries of the Lexington Policy, and in turn that this Policy was undertaken at least partially in PMI Delaware's name. *See* Fed. R. Civ. P. 17(a)(1)(F). The same problems just discussed in relation to PMI Delaware's status as a third party beneficiary apply to its clients and employees. Namely, there is no evidence that if Lexington provides coverage for costs related to the BCBS suit, then these third parties will be benefitted by, for example, having their insurance coverage reinstated.

11

PMI Delaware's strongest argument is that PMI and PMI Delaware are *both* insured under the same Lexington Policy. The record is contradictory on this point. The Policy itself lists only PMI as an insured, but Appellants' complaint states that the "Insured" collectively refers to PMI and PMI Delaware. The complaint alleges in paragraph seven that the "Insured" are covered, and Lexington admitted this point in its answer. Further, Lexington's statement of material facts in support of its motion for summary judgment asserts that PMI and PMI Delaware are treated as a single insured for purposes of this suit. The issue of who is insured under the Policy therefore should be resolved below.

Even if PMI Delaware is insured under the Policy, in order to avoid dismissal, it would also have to show that it is entitled to some portion of any judgment against Lexington that might be entered. Given that PMI Delaware did not suffer any loss which is allegedly covered under the Policy, it seems unlikely that PMI Delaware could make this showing. But it is conceivable that Lexington would issue payment jointly to all insured parties under the same policy whenever a claim is covered, regardless of which party suffered the loss.[3] Therefore, the issue of who would receive payment under the Policy if Lexington is forced to cover losses associated with the BCBS suit must be resolved below.

---

[3] For example, if a husband and wife are both insured under a single car insurance policy, when a claim is covered, the check might be issued to both the husband and the wife regardless of who was involved in the underlying accident.

For the reasons just discussed, we doubt that PMI Delaware or any other party would be prejudiced by dismissing PMI Delaware.  But it is not entirely clear from the record whether PMI Delaware could recover as an insured under the Lexington Policy.  Therefore, we remand for the limited purpose of determining whether PMI Delaware would be entitled to payment as an insured under the Lexington Policy should Appellants prevail on Counts I and II.  *See Tri-Cities*, 427 F.2d at 327 (remanding because it is unclear which parties are referenced in a contract).

IV.

The issue of Yoohoo's citizenship also presents an obstacle to diversity jurisdiction.  Limited liability companies like Yoohoo are "citizen[s] of any state of which a member of the company is a citizen."  *Mallory*, 663 F.3d at 1305 (internal quotation marks omitted).  In response to our jurisdictional questions, Lexington claimed that Yoohoo was a citizen of Florida and Delaware because it "has as its members, PMI, a citizen of Florida, and PMI Delaware, a citizen of Delaware."  If true, this would destroy diversity, as Yoohoo and Lexington would both be citizens of Delaware.

Lexington claimed initially that PMI Delaware's citizenship *as a member of Yoohoo* could be disregarded for the same reasons that its citizenship *as a plaintiff* should be disregarded.  *See Navarro*, 446 U.S at 461, 100 S. Ct. at 1782

13

("[F]ederal court[s] must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."). The Supreme Court has definitively rejected this argument and held that regardless of whether a member of an LLC can be a proper party on its own, the member's citizenship cannot be disregarded for purposes of determining the LLC's citizenship. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195, 110 S. Ct. 1015, 1021 (1990) ("[W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members . . . ." (internal quotation marks omitted)). In short, if PMI Delaware is a member of Yoohoo, diversity is destroyed because Yoohoo would therefore also be a citizen of Delaware.

But, in its Answer Brief, "Lexington apologize[d] for its misrepresentation of the record . . . , which it believed indicated that PMI Florida and PMI Delaware were members of . . . Yoohoo Capital LLC." Instead, Lexington asserts that "Appellants will not be able to dispute that all three members of Yoohoo Capital LLC are citizens of Georgia." In determining whether this is true, which would render Yoohoo diverse, we "consider the facts disclosed on the record as a whole." *Villarreal v. Brown Express, Inc.,* 529 F.2d 1219, 1221 (5th Cir. 1976) (per

14

curiam). Lexington points us to record evidence confirming that the owners of Yoohoo are not, as previously stated, PMI and PMI Delaware. The owners, it appears, are three individuals. Lexington does not, however, point us to record evidence confirming the citizenship of these individuals. Thus, diversity is not sufficiently evidenced in the record. *Mallory*, 663 F.3d at 1305 ("To sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members." (internal quotation marks omitted)).

Deficiencies of this kind are not fatal to a court's jurisdiction, as "[d]effective allegations of jurisdiction may be amended . . . in the trial or appellate courts." 28 U.S.C. § 1653; *see also Corporate Mgmt. Adivsors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296–97 (11th Cir. 2009); *Mallory*, 663 F.3d at 1305. In *Mallory*, which is directly on point, we allowed defective allegations of citizenship to be corrected by filing amendments in this court. 663 F.3d at 1305. Because we are already remanding for development of the record on PMI Delaware's status as a proper plaintiff, however, we will grant Lexington's request for limited remand to permit Lexington to amend their removal notice to correctly allege Yoohoo's citizenship and to develop the record to the extent necessary to prove citizenship.[4]

---

[4] Lexington requests that we decide the other issues on appeal on the merits in the meantime. This, we cannot do, as we would be acting without jurisdiction unless and until the deficiencies in the record relating to removal jurisdiction are cured. *See Belleri*, 712 F.3d at 547.

15

V.

For the foregoing reasons, we vacate and remand for the district court to determine, with the assistance of amended filings and additional fact-finding, whether PMI Delaware may be dismissed without prejudicing the parties and whether all of Yoohoo's members are diverse from Lexington.  If the district court finds both that PMI Delaware can be dismissed and that Yoohoo's members are not citizens of either Delaware or Massachusetts, the court should reenter its order awarding Lexington summary judgment.  If an appeal is filed thereafter, we can determine at that time whether to permit additional briefing or whether the case can be resubmitted on existing briefing and arguments.

**VACATED AND REMANDED.**